1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL MARION,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, a municipality of the State of California; LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, a Department of the County of Los Angeles, California; LEROY BACA, Sheriff of the Los Angeles County Sheriff's Department; and DOES 1 through 25, inclusive,<br><br>Defendants. | CASE NO. CV 09-04361 MMM (RZx)<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; DENYING DEFENDANTS' MOTION TO STRIKE; AND DENYING DEFENDANTS' MOTION FOR MORE DEFINITE STATEMENT |

Plaintiff Michael Marion has sued the County of Los Angeles, the Los Angeles County Sheriff's Department, Sheriff Leroy Baca, and certain fictitious defendants, alleging that they discriminated against him in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. §§ 4301-4333, and the California Military and

Veterans Code §§ 394 *et seq.*[1]  Defendants have moved to dismiss the federal claims against the Sheriff's Department and Sheriff Baca and to dismiss the state cause of action for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2]  Defendants also move to strike portions of the complaint, or in the alternative, for a more definite statement.[3]

## I.  FACTUAL BACKGROUND

Marion was employed by the Los Angeles County Sheriff's Department as a deputy sheriff in the custody division on April 2, 1998.[4]  On March 21, 2001, he enlisted in the California Army National Guard as a commissioned reserve officer, first lieutenant, platoon leader, and helicopter pilot.[5]

Marion alleges that the Sheriff's Department made a number of decisions denying him advancement, transfer, or other benefits that were motivated by an intent to discriminate against him because of his military service.  On June 29, 2001, for example, approximately six weeks after Marion began basic training, he was denied admission to a patrol school class scheduled to commence on July 30, 2001.  Three other deputies who purportedly had less seniority than

---

[1]See Complaint for Damages ("Complaint"), Docket No. 1 (Apr. 1, 2009), attached as Exhibit to Notice of Removal, Docket No. 1 (June 17, 2009).

[2]See Defendants' Notice of Motion and Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted, ("Motion to Dismiss"), Docket No. 7 (July 22, 2009). Plaintiff opposes the motion.  (See Opposition to Motion to Dismiss ("Opp. to Motion to Dismiss"), Docket No. 12 (Aug. 4, 2009).)

[3]See Defendants' Notice of Motion and Motion to Strike Portions of Plaintiff's Complaint, or in the Alternative, Motion for More Definite Statement, ("Motion to Strike"), Docket No. 8 (July 22, 2009).  Plaintiff opposes the motion.  (See Opposition to Motion to Strike Portions of Complaint or Alternative Motion for More Definite Statement("Opp. to Motion to Strike"), Docket No. 11 (Aug. 4, 2009).)

[4]Complaint, ¶ 10.  Marion's employment at the Sheriff's Department continues to this date. (*Id.*, ¶ 11.)

[5]*Id.*, ¶ 12.  Marion's military duties continue to this date, concurrent with employment as a deputy sheriff.  (*Id.*, ¶ 13.)

Marion were selected to participate in the class, allegedly in violation of the department's policies and seniority protocol.[6] Marion was again denied admission to the class on September 10, 2001, also allegedly in violation of the seniority protocol.[7] On October 15, 2001, Marion's name was omitted from the list of attendees for the patrol school class. After Marion gave defendants a copy of the USERRA statute, he was added to the list of attendees.[8] Marion contends that his performance at patrol school was exemplary and that one of his trainers stated that Marion "was by far, hands down, the most thoroughly prepared and best trainee" he had ever seen.[9]

In June 2002, Marion requested that defendants retroactively correct his patrol seniority to what it would have been had his initial request for training not been denied. On September 2002, defendants orally denied his request and refused to put the denial in writing.[10] Marion alleges that the failure to make a retroactive correction to his seniority damaged him by delaying salary step increases, patrol retention bonus pay, and eligibility required to apply for positions within the department. He asserts that the wrongful denial of seniority placed him at a disadvantage as compared with his peer group, and led to loss of benefits such as selection of work shifts, hours, conditions, patrol cars, and locations.[11]

On January 1, 2003, Marion made a formal request for leave from duty at the sheriff's department to attend military training.[12] Thereafter, in June 2003, Marion applied for the "on-

---

[6]*Id.*, ¶¶ 13-14. Marion alleges that the "training improves skills and discipline for improved job performance and thereby improves opportunity for advancement." (*Id.*, ¶ 14.)

[7]*Id.*, ¶ 15.

[8]*Id.*, ¶ 16.

[9]*Id.*, ¶ 17.

[10]*Id.*, ¶ 18.

[11]*Id.*, ¶ 19.

[12]*Id.*, ¶ 20. Marion reported to active duty at the Officer Candidate School at Fort McClellan, Alabama, on January 10, 2003 and remained on active duty until March 8, 2003. (*Id.*, ¶ 21.)

loan temporary position of Avalon Island summer deputy." Although interviewed for the position, Marion did not receive it, allegedly as a result of discrimination based on his reserve military status.[13] Marion continued to apply for various available positions throughout 2004, including a position on the Crisis Intervention Team ("CIT"), and as a field training officer ("FTO"). He also applied to take the 2004 Sergeant's examination. In addition to rejecting Marion for these positions, defendants discontinued his patrol vehicle and "bumped" him "all over town."[14] Marion took the Sergeant's examination in late 2004 and qualified in "Band 2" with an appraisal of his promotability as 100%, the highest possible rating.[15] On November 18, 2004, defendants included Marion's name on the FTO candidate list.

On December 8, 2004, in response to military orders, Marion submitted a formal request for military leave to attend active duty flight school.[16] That same day, he received two memoranda regarding shift adjustments that conflicted with his allowable travel time to and from flight school. Defendants also refused to give Marion a full sixty days' paid military leave. Rather, they authorized only thirty days' leave. As a result, Marion filed a formal complaint.[17]

Marion attended flight school from January 3, 2005 to February 8, 2006, at Fort Rucker, Alabama.[18] In February 2005, defendants promoted all individuals on the initial November 18, 2004 FTO list except Marion.[19]

On February 13, 2006, Marion returned from military service and reported to duty at the

---

[13]*Id.*, ¶ 22.

[14]*Id.*, ¶ 23.

[15]*Id.*, ¶ 24.

[16]*Id.*, ¶ 25. At the time that Marion made this request he had accrued approximately seventeen weeks personal time available. (*Id.*) The outcome of this formal complaint is not alleged.

[17]*Id.*, ¶¶ 27, 29.

[18]*Id.*, ¶ 30.

[19]*Id.*, ¶¶ 25, 31.

1   Sheriff's Department.  Marion was denied all seniority and advancement opportunities during his

2   year-long absence, was denied medical benefits for approximately two months after his return,

3   was denied the opportunity to apply for mandated overtime shifts in a timely manner, and was

4   placed on a "delinquent draft list." Marion consequently gave defendants another copy of the

5   USERRA statute.[20]  During these months, Marion also received several memoranda regarding

6   "shift adjustments, changed vehicles and changed hours." Marion conferred with defendants, who

7   refused to provide further opportunities for him to make up lost advancement opportunities.[21]

8   In April 2006, Marion requested a one-hour adjustment of his schedule to address child-

9   care conflicts, an accommodation Marion alleges deputies routinely received.  Defendants denied

10  the adjustment and refused all other accommodations.  Marion asserts that defendants denied the

11  request to discriminate against him based on his military service and to retaliate against him for

12  requesting advancement opportunities.[22] Also in April, Marion requested a transfer to the "Magic

13  Mountain Team." Marion contends that during a meeting regarding the transfer, he was "grilled

14  extensively about being a military reservist," and Sheriff's Department employees commented that

15  the department "could not afford" and "would not reimburse[ ]" Marion when he "needed to

16  attend drill weekends."[23]

17  Throughout 2006, Marion received evaluations that rated his performance as only

18  "competent," and that contained several negative comments.  Marion alleges that the adverse

19  evaluations and negative comments were directly caused by his military service obligations and

20  his need to request occasional accommodation so that he could participate in military drills.[24]  In

21  October 2006, Marion received a score of 76 out of 100 on the 2006 Sergeant's examination.

---

23  [20]*Id.*, ¶ 32.  The complaint does not allege the effect of being placed on a "delinquent draft
    list."

25  [21]*Id.*, ¶ 34.

26  [22]*Id.*, ¶ 35.

27  [23]*Id.*, ¶ 36.

28  [24]*Id.*, ¶ 38.

Marion appealed the score,; his appeal was denied on March 15, 2007.  Marion alleges that his adverse score and the denial of his appeal were a direct result of his service as a reservist and his need for occasional accommodation of his drill obligations.[25]

Marion also alleges several denials of promotion between mid-2006 and late 2008.  In 2006, Marion applied for the position of Aero Bureau Observer/Sheriff Recruiter/ Academy Staff. He applied for a FTO position on June 2, 2006, January 16, 2007, and January 12, 2008.  On December 13, 2006, Marion was denied a position as Recruit Academy Staff Instructor for which there were sixteen applicants.  On February 20, 2008, he was interviewed for an FTO position. On April 10, 2008, however, he was denied promotion to FTO, based on comments that he had unspecified "issues" he needed to resolve.  Defendants allegedly refused to clarify the nature of these "issues."

On June 4, 2008, Marion filed a formal grievance regarding defendants' refusal to clarify the "issues" that precluded his promotion; he also grieved his non-selection as an FTO.  Marion applied for a B-1 supervising line deputy position on May 28, 2008, for an Aero Bureau Observer position on June 17, 2008, for a South Facility B-1 supervising line deputy position on September 17, 2008, for a NCCF B-1 supervising line deputy position on September 24, 2008, and for another B-1 position at the north facility in October 2008.[26]  In the interim, on July 7, 2008, he once again received an evaluation that rated his performance as "competent."[27]  Marion alleges that each of the actions was a direct result of his service in the reserves and his request for occasional accommodation of his drill obligations.

Marion notified defendants that from November 2 to December 13, 2008, he would be in Pennsylvania on active military duty, training on Blackhawk helicopters.  On October 20, 2008, defendants notified Marion that he would be tested on the morning of October 27, 2008; Marion

---

[25]*Id.*, ¶ 39.

[26]*Id.*, ¶¶ 40-45, 47-51.  The complaint does not allege the outcome, if any, of this formal grievance procedure.

[27]*Id.*, ¶ 46.

confirmed the date.  On October 21, however, defendants notified Marion that his test date would be changed to either November 3 or November 5.  Marion advised defendants of the conflict with his active duty service on October 24, and proposed alternative test dates.  Defendants did not respond.  All other candidates tested were promoted.[28]

On February 16, 2009, Marion requested information regarding testing and promotion opportunities.  He received a response stating: "Sorry, but we decided not to wait for you to return before testing.  So, we conducted our test, the list has been certified and we have begun making appointments.  We will probably begin testing again soon as our current list is almost exhausted."[29]

Marion alleges that his military service was a "motivating factor" in defendants' decision to take adverse employment action against him.  Consequently, he asserts, the actions violated federal law.[30]  Specifically, Marion contends that defendants discriminated against him based on his military service by refusing to provide sixty days' paid leave in 2005, denying him escalator pay and seniority benefits during his 2005 leave, refusing to promote him to FTO, and denying other advancement opportunities such as transfers.[31]  Marion alleges that the same conduct constituted unlawful discrimination under California Military and Veterans Code §§ 394 *et seq.*

## II.  DISCUSSION

### A.   Legal Standard Governing Motions To Dismiss Under Rule 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v.*

---

[28]*Id.*, ¶¶ 51-53.  In his complaint, Marion does not specify to what testing he is referring, but it is possible he is referring to the 2008 Sergeant's examination.

[29]*Id.*, ¶ 54.

[30]*Id.*, ¶ 60.

[31]*Id.*, ¶¶ 69-81.

7

1   *Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1988).  In deciding a Rule 12(b)(6)

2   motion, the court generally looks only to the face of the complaint and documents attached

3   thereto.  *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal*

4   *Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1990).

5        The court must accept all factual allegations pleaded in the complaint as true, and construe

6   them and draw all reasonable inferences from them in favor of the nonmoving party.  *Cahill v.*

7   *Liberty Mutual Insurance Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747,

8   750 (9th Cir. 1995).  It need not, however, accept as true unreasonable inferences or legal

9   conclusions cast in the form of factual allegations.  See *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct.

10  1937, 1949 (2009) ("[B]are assertions . . . amount[ing] to nothing more than a 'formulaic

11  recitation of the elements' of a constitutional discrimination claim" are not entitled to an

12  assumption of truth, quoting *Bell Atlantic Corp. v. Twombly*, 50 U.S. 544, 555 (2007)); see also

13  *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("Such allegations are not to be

14  discounted because they are 'unrealistic or nonsensical,' but rather because they do nothing more

15  than state a legal conclusion – even if that conclusion is cast in the form of a factual allegation").

16       To survive a motion to dismiss, a plaintiff's complaint must "contain sufficient factual

17  matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . .  A claim has

18  facial plausibility when the plaintiff pleads factual content that allows the court to draw the

19  reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at

20  1949.  See also *id.* ("The plausibility standard is not akin to a 'probability requirement,' but it

21  asks for more than a sheer possibility that a defendant has acted unlawfully. . . .  Where a

22  complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of

23  the line between possibility and plausibility of "entitlement to relief,"'" quoting *Twombly*, 550

24  U.S. at 557); *Twombly*, 550 U.S. at 545 ("While a complaint attacked by a Rule 12(b)(6) motion

25  to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the

26  'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

27  formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be

28  enough to raise a right to relief above the speculative level, on the assumption that all the

1   allegations in the complaint are true (even if doubtful in fact)" (citations omitted)).   See also, e.g.,

2   *Moss*, 572 F.3d at 969 ("[F]or a complaint to survive a motion to dismiss, the non-conclusory

3   'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a

4   claim entitling the plaintiff to relief," citing *Iqbal* and *Twombly*).

5         **B.**   **Legal Standard Governing Motions to Strike Under Rule 12(f)**

6         Under Rule 12(f), the court may strike "any insufficient defense or any redundant,

7   immaterial, impertinent or scandalous matter." FED.R.CIV.PROC. 12(f).   A motion to strike is

8   properly granted where plaintiff seeks a form of relief that is not available as a matter of law.

9   *Rosales v. Citibank, Federal Savings Bank*, 133 F.Supp.2d 1177, 1180 (N.D. Cal. 2001) ("Under

10  Federal Rule of Civil Procedure 12(f), a party may move to strike 'any redundant, immaterial,

11  impertinent, or scandalous matter.' . . .  This includes striking any part of the prayer for relief

12  when the relief sought is not recoverable as a matter of law"); *Ingram v. Grant Joint Union High

13  School District*, No. CIV S-08-2490 FCD DAD PS, 2009 WL 2941463, *4 (E.D. Cal. Sept. 10,

14  2009) ("A motion to strike is well-taken when 'it is clear that the matter to be stricken could have

15  no possible bearing on the subject matter of litigation,'" quoting *LeDuc v. Kentucky Central Life

16  Insurance Co.*, 814 F.Supp. 820, 830 (N.D. Cal. 1992)).   See also *Hibbs-Rines v. Seagate

17  Technologies, LLC*, No. C 08-05430 SI, 2009 WL 513496, *2 (N.D. Cal. Mar. 2, 2009) ("A

18  motion to strike may be appropriate where it will streamline the ultimate resolution of the

19  action").

20        "Impertinent allegations are those that are not responsive or relevant to issues involved in

21  the action and which would not be admitted as evidence in the litigation." *Id*.  "'Immaterial'

22  matter is that which has no essential or important relationship to the claim for relief or the

23  defenses being pleaded." *Dawe v. Corrections USA*, No. CIV. S-07-1790 LKK/EFB, 2009 WL

24  2591146, *2 (E.D. Cal. Sept. 20, 2009) (quoting 5 Charles A. Wright & Arthur R. Miller,

25  FEDERAL PRACTICE & PROCEDURE § 1382, at 706-07 (1990)).   "'Redundant' allegations are those

26  that are needlessly repetitive or wholly foreign to the issues involved in the action." *California

27  Department of Toxic Substances Control v. Alco Pacific, Inc.*, 217 F.Supp.2d 1028, 1033 (C.D.

28  Cal. 2002).   "Superfluous historical allegations are a proper subject of a motion to strike."

1   *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S.

2   517 (1994).

3   "Rule 12(f) motions are generally disfavored because they are often used as delaying

4   tactics and because of the limited importance of pleadings in federal practice." *Rosales*, 133

5   F.Supp.2d at 1180. "Some courts also refuse to grant Rule 12(f) motions unless prejudice would

6   result to the moving party from denial of the motion." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352

7   F.Supp.2d 1048, 1057 (N.D. Cal. 2004). See also *Best Deals on TV, Inc. v. Naveed*, No. C

8   07-1610 SBA, 2007 WL 2825652, *13 (N.D. Cal. Sept. 26, 2007) ("Where the motion involves

9   background or historical material, it should not be granted unless the material is prejudicial to the

10  opponent"); *LeDuc*, 814 F.Supp. at 830 ("Evidentiary allegations are not usually proper pleading,

11  but allegations supplying background or historical material or other matter of an evidentiary nature

12  will not be stricken unless unduly prejudicial to defendant"); *Alco Pacific*, 217 F.Supp.2d at 1033

13  ("The possibility that issues will be unnecessarily complicated or that superfluous pleadings will

14  cause the trier of fact to draw 'unwarranted' inferences at trial is the type of prejudice that is

15  sufficient to support the granting of a motion to strike"). "Where allegations, when read with the

16  complaint as a whole, give a full understanding thereof, they need not be stricken." *LeDuc*, 814

17  F.Supp. at 830.

18  "Courts must view the pleading under attack in the light most favorable to the pleader,

19  treating as admitted all material facts alleged and all reasonable presumptions that can be drawn

20  therefrom." *Rosales*, 133 F.Supp.2d at 1180. See also *State of California ex rel. State Lands

21  Commision v. United States*, 512 F.Supp. 36, 39 (N.D. Cal. 1981). ("On a motion to strike, the

22  Court must treat as admitted all material factual allegations underlying the challenged defenses and

23  all reasonable presumptions that can be drawn therefrom"). "If there is any doubt whether the

24  portion to be stricken might bear on an issue in the litigation, the court should deny the motion."

25  *Platte Anchor Bolt*, 352 F.Supp.2d at 1057.

26

27

28

10

**C.** **Whether Plaintiff's Federal Claims Against Sheriff Baca and the Sheriff's Department Must Be Dismissed**

Plaintiff's complaint includes two federal claims, both alleging discrimination against Marion on the basis of his status as a military reservist. Defendants have moved to dismiss both claims to the extent they are asserted against Sheriff Baca and the Sheriff's Department. Defendants contend that neither fits the definition of "employer" found in USERRA, and that Marion's only employer is the County of Los Angeles. In this regard, defendants assert that the Sheriff's Department is not a separate legal entity from the County. They also maintain that Sheriff Baca, who is sued only in his official capacity, neither directly supervised Marion nor engaged in any wrongful conduct toward him, and that an official capacity suit is duplicative of the suit against the County.[32]

**1.** **Suit Against the Sheriff's Department**

USERRA defines an "employer" as "any person, institution, organization, or other entity that pays salary or wages for work performed or that has control over employment opportunities, including – (I) a person, institution, organization, or other entity to whom the employer has delegated the performance of employment-related responsibilities . . . ." 38 U.S.C. § 4303(4)(A). The statute creates two causes of action: "(1) an action brought by an individual against a State (as an employer) . . . may be brought in state court; and (2) an action brought against a private employer, which may be brought in both state and federal court." *Townsend v. University of Alaska*, 543 F.3d 478, 486 (9th Cir. 2008).

Because the Ninth Circuit has rejected the contention that the Los Angeles Sheriff's Department is an "arm of the state" entitled to Eleventh Amendment immunity, see *Streit v. County of Los Angeles*, 236 F.3d 552, 566-67 (9th Cir. 2001), it is apparent that Marion asserts the second of the types of claims authorized by the statute.

Neither the Ninth Circuit nor any California district court has considered whether a department or agency of a county or municipality, and the head of that department, fall within the

---

[32]Motion to Dismiss at 2-3.

statutory definition of employer found in USERRA.   The Ninth Circuit has, however, routinely decided USERRA cases in which both a municipality and a department or head of a department were named defendants without commenting on the issue.  See, e.g., *Wallace v. City of San Diego*, 479 F.3d 616 (9th Cir. 2007) (USERRA suit against City of San Diego and San Diego Police Department); *Kursar v. Whatcom County*, 232 F.3d 895 (Table), 2000 WL 1045355 (9th Cir. July 28, 2000) (Unpub. Disp.) (USERRA suit against Whatcom County, the Whatcom County Sheriff, and various other employees of the sheriff's department); *Church v. City of Reno*, 168 F.3d 498 (Table), 1999 WL 65205 (9th Cir. Feb. 9, 1999) (Unpub. Disp.) (USERRA suit against the City of Reno, Reno's Chief of Police individually and in his official capacity and other Police Department employees).

In a recent case considering the issue of multiple employers under § 4304(4)(A)(I), a court in the Middle District of Alabama considered whether suit could be brought against two private employers – HMMA, which manufactures Hyundai automobiles, and HMA, which distributes, markets, and sells Hyundai automobiles in the United States.   *Dees v. Hyundai Motor Manufacturing Alabama, LLC*, 605 F.Supp.2d 1220, 1223-24 (M.D. Ala. 2009).[33]  Concluding that the statute was concerned "only with the 'person, institution, organization, or other entity' that carries out 'employment-related responsibilities,' and not with who controls the overall enterprise," it stated that the key question was whether each defendant carried out employment-related responsibilities.  *Id.* (quoting 38 U.S.C. § 4304(4)(A)(I)).  The court found that HMMA alone carried out those responsibilities, as HMA had no employees in Alabama and all personnel decisions were made by HMMA.  *Id.*  Consequently, it concluded that only HMMA was an appropriate defendant.  *Id.* at 1224.

The *Dees* court did not, however, exclude the possibility that more than one entity could be deemed to be an employer under USERRA, and other district court cases support plaintiff's maintenance of this suit against multiple entities.  In *Jones v. Wolf Camera, Inc.*, Civ.A No. 3:96-CV-2578-D, 1997 WL 22678 (N.D.Tex. Jan. 10, 1997), accepting the plaintiff's allegations

---

[33]The parent company of both entities is Hyundai Motor Company.  *Id.* at 1224.

as true for purposes of a Rule 12(b)(6) motion, the court held that two individual employees who had purportedly been delegated authority to hire and fire employees fell within USERRA's definition of employer. *Id.* at *2. Similarly, in *Brandsasse v. City of Suffolk, Virginia*, 72 F.Supp.2d 608 (E.D. Va. 1999), the court noted that the City paid salaries and wages for work performed, but that both the City and its Director of Personnel controlled employment opportunities. Consequently, it held that both fit the statutory definition of employer. *Id.* at 618. The court noted that its holding was not inconsistent with the holding in *Satterfield v. Borough of Schuylkill Haven*, 12 F.Supp.2d 423 (E.D. Pa. 1998). There, the court dismissed each of the individual defendants named in the suit because "[p]laintiff had no duty to obey the orders of any single Borough Council member, and . . . no individual Borough Council member had the authority to hire or fire the [p]laintiff." *Id.* at 438. See also *Risner v. Ohio Department of Rehabilitation and Correction*, 577 F.Supp.2d 953, 967 (N.D. Ohio 2008) (allowing a USERRA suit to proceed against a state department as well as employees who "had the power to bring the [agency] into compliance with USERRA"); *Novak v. Mackintosh*, 919 F.Supp. 870, 878 (D.S.D. 1996) (finding that the definition of "employer" in USERRA was broader than that in Title VII of the Civil Rights Act of 1964); *Brooks v. Fiore*, No. 00-803 GMS, 2001 WL 1218448, *9 n. 3 (D. Del. Oct. 11, 2001) ("Courts have recognized that USERRA applies only to employers, or those individuals who have the power to hire or fire the employee").

The Department of Labor, moreover, has promulgated regulations interpreting § 4303(4)(A), which are informative. The regulations ask the question, "Can one employee be employed in one job by more than one employer?" and answer it affirmatively:

> "Yes. Under USERRA, an employer includes not only the person or entity that pays an employee's salary or wages, but also includes a person or entity that has control over his or her employment opportunities, including a person or entity to whom an employer has delegated the performance of employment-related responsibilities. For example, if the employee is a security guard hired by a security company and he or she is assigned to a work site, the employee may report both to the security company and to the site owner. In such an instance,

both employers share responsibility for compliance with USERRA.   If the security company declines to assign the employee to a job because of a uniformed service obligation (for example, National Guard duties), then the security company could be in violation of the reemployment requirements and the anti-discrimination provisions of USERRA.   Similarly, if the employer at the work site causes the employee's removal from the job position because of his or her uniformed service obligations, then the work site employer could be in violation of the reemployment requirements and the anti-discrimination provisions of USERRA."   20 C.F.R. § 1002.37.

Defendants contend that because the examples in the regulation presuppose "two separate and distinct entities, both of which exercise control over the employee," the regulation is inapposite.[34]  The history of the regulation, however, does not bear this out.  During the notice-and-comment period, the Department of Labor received a comment from the Equal Employment Advisory Council proposing "that the regulatory definition of employer explicitly exclude from liability for statutory violations individuals, such as managers or supervisors, who are not directly responsible for paying wages to employees."  70 Fed. Reg. 75248 (Dec. 19, 2005).  The Council offered comparisons to the definitions of "employer" found in the Americans with Disabilities Act and the Age Discrimination in Employment Act, as interpreted by the courts.  *Id.*  The Department declined to interpret USERRA in a similar fashion, finding that the statute's definition of the term was "quite different and much broader" than the definitions found in the ADA, the ADEA and the Civil Rights Act as well.  It noted specifically the inclusion of any person who "has control over employment opportunities," including a person "to whom the employer has delegated the performance of employment-related responsibilities."  *Id.* (quoting 38 U.S.C. § 4303(4)(A)(I)).

Defendants' principal argument in support of dismissal of the sheriff's department rests on

---

[34]Reply to Opposition to Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted ("Motion to Dismiss Reply"), Docket No. 14 (Aug. 14, 2009) at 2-3.

a misinterpretation of *Streit*.  There, the Ninth Circuit held that the Los Angeles County Sheriff's Department was a "separately suable public entity."  *Streit*, 236 F.3d at 565-66.  Defendants assert the holding in *Streit* is limited to the department's capacity as manager of the county jail.[35] Neither *Streit* nor the cases it cites reflect such a limitation.[36]  See *Karim-Panahi v. Los Angeles Police Department*, 839 F.2d 621, 624 n. 2 (9th Cir. 1988) ("Municipal police departments are 'public entities' under California law and, hence, can be sued in federal court for alleged civil rights violations"); *Shaw v. State of California Department of Alcoholic Beverage Control*, 788 F.2d 600, 605 (9th Cir. 1986) ("[W]e conclude that the courts of California would hold that the Police Department is a public entity . . . [that] may be sued in Federal Court"); *Jackson v. Alameda County Sheriffs Department*, No. C 92-4419 BAC, 1993 WL 174896, *4 (N.D. Cal. May 14, 1993) ("The Sheriff's Department is a public entity for the purposes of service under California Law").  Defendants' argument that the sheriff's department cannot be sued as a separate entity is therefore unavailing.

The court therefore joins other courts interpreting this provision and the Department of Labor, and concludes that the plain language of the statute includes within its definition of employer any person or entity that has control over employment opportunities and any person, institution, organization, or other entity to whom the employer has delegated control over employment opportunities.  Marion has sufficiently alleged that the Sheriff's Department and its agents had control over his employment opportunities and exercised that control repeatedly in a manner adverse to Marion.  Consequently, he has adequately pled that the department is an entity to which the County has delegated control over his employment opportunities.  Defendants' motion to dismiss Marion's federal claims against the Sheriff's Department is therefore denied.

---

[35]Motion to Dismiss at 2.

[36]The portion of the *Streit* decision that focused on the department's administration of the county jail and completion of prisoner release records checks examined whether the sheriff's department was a state or county actor under *McMillian v. Monroe County*, 520 U.S. 781 (1997). See *Streit*, 236 F.3d at 559-65.  The court's examination of the department's status as a "suable entity," by contrast, was general and did not focus in any way on the nature of the duties that gave rise to the lawsuit.  *Id*. at 565-66.

## 2.     Sheriff Baca

Defendants next seek to have Marion's federal claims against Sheriff Baca dismissed because he is sued only in his official capacity.  Defendants analogize to suits under 42 U.S.C. § 1983, a context in which the Supreme Court has held that official-capacity suits "generally represent only another way of pleading an action against an entity of which the officer is an agent."  *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690 n. 5 (1978). Neither the Ninth Circuit nor any California district court has directly addressed whether this doctrine applies in the USERRA context.  A court in the Eastern District of Pennsylvania, however, has found that official-capacity suits against county officials under USERRA are duplicative of claims against the agency for which the officials work, warranting dismissal. *Satterfield*, 12 F.Supp.2d at 431-32 (dismissing USERRA claims asserted against individual defendants in their official capacities because they were "redundant").  See also *Loperena v. Scott*, No. 2:08-cv-99, 2009 WL 1066253, *1 (M.D. Fla. Apr. 21, 2009) (treating a suit against a sheriff in his official capacity as "tantamount to suit against the government entity he represents," and concluding that "the true defendant here is Lee County Sheriff's Office, a subdivision of Lee County").[37]

As noted, USERRA creates two distinct causes of action: (1) an action against a state as

------

[37]A number of courts, including the Ninth Circuit, have considered whether a state official sued in his official capacity under USERRA must be dismissed under the Eleventh Amendment, and have concluded that dismissal is appropriate.  See *Townsend*, 543 F.3d at 485 n. 5 (stating that a suit against a state official in his official capacity under USERRA would be barred by Eleventh Amendment sovereign immunity because that a suit "against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself," quoting *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 952 (9th Cir. 2008)); *Risner*, 577 F.Supp.2d at 965 (dismissing under the Eleventh Amendment a USERRA suit against state officials in their official capacities because a "suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," quoting *Printz v. United States*, 521 U.S. 898. 931 (1997)).  These decisions do not control analysis of the point defendants raise, however, because they concern the unique issue of Eleventh Amendment immunity, a context in which courts have routinely recognized that a plaintiff cannot circumvent the immunity provided to a state by suing officials of the state in their official capacity.

an employer, and (2) an action against a private employer.  *Townsend*, 543 F.3d at 486.  Because the county and the sheriff's department are not state entities, and because the Ninth Circuit has not recognized USERRA suits against municipalities as a separate category of action (as in the § 1983 context), Marion's suit must be deemed to involve a private employer and a supervisor of that private employer, Sheriff Baca.  USERRA authorizes suits against both a private employer and a supervisor who controls employment opportunities.  That Marion could maintain a suit against Sheriff Baca as supervisor for a private employer is therefore clear.  Given that the Ninth Circuit has concluded that USERRA creates a dichotomy between state employers, on the one hand, and all other employers, including municipalities, on the other, it is unclear whether it would permit official capacity suits under USERRA.

   To the extent that a USERRA plaintiff can sue a supervisor for a public employer in his or her official capacity, however, the principles governing official capacity suits in other types of federal suits would apply.  "An official capacity suit against a municipal officer is equivalent to a suit against the entity."  *Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff's Department*, 533 F.3d 780, 798 (9th Cir. 2008) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).  "When both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant."  *Sherman v. County of Maui*, 119 Fed. Appx. 535, 537 (9th Cir. June 29, 2006) (Unpub. Disp.) (holding that "claims for damages against County officials in their official capacity were effectively claims against the County itself, and thus the individual defendants were duplicative"); *Luke v. Abbott*, 954 F.Supp. 202, 204 (C.D. Cal. 1997) (if a complaint includes both a claim against a local government entity and an official-capacity claim against an officer of the entity, the court may dismiss the official-capacity claim against the officer, "leaving the local government entity as the correct defendant"); *Vance v. County of Santa Clara*, 928 F.Supp. 993, 996 (N.D. Cal. 1996) ("[I]f individuals are being sued in their official capacity as municipal officials and the municipal entity itself is also being sued, then the claims against the individuals are duplicative and should be dismissed").  To the extent Marion sues Sheriff Baca in his official capacity, therefore, dismissal is appropriate.

1       To the extent Marion seeks to hold Sheriff Baca liable in his individual capacity, moreover,

2  he has not alleged sufficient facts to state a claim against him. "An employee who makes a

3  discrimination claim under USERRA bears the initial burden of showing by a preponderance of

4  the evidence that his military service was a substantial or motivating factor in the adverse

5  employment action. If the employee makes that prima facie showing, the employer can avoid

6  liability by demonstrating, as an affirmative defense, that it would have taken the same action

7  without regard to the employee's military service." *Erickson v. U.S. Postal Service*, 571 F.3d

8  1364, 1368 (Fed. Cir. 2009). See also *Crews v. City of Mt. Vernon*, 567 F.3d 860, 864 (7th Cir.

9  2009) ("Under the burden-shifting framework of § 4311, a plaintiff makes out a prima facie case

10  of discrimination by showing that his service membership was 'a motivating factor in the

11  employer's action'").

12       "The term 'motivating factor' means that if the employer was asked at the moment of the

13  decision what its reasons were and if it gave a truthful response, one of those reasons would be

14  the employee's military position or related obligations." *Robinson v. Morris Moore Chevrolet-*

15  *Buick, Inc.*, 974 F.Supp. 571, 575-6 (E.D. Tex. 1997) (citing *Price Waterhouse v. Hopkins*, 490

16  U.S. 228, 250 (1989)).[38]  See also *Woodard v. New York Health and Hospitals Corp.*, 554

17  F.Supp.2d 329, 349 (E.D.N.Y. 2008) (quoting *Robinson*, 974 F.Supp. at 576). Thus, to prove

18  that his military position and related obligations were motivating factors in the adverse

19  employment actions he suffered, Marion will have to show that his employer "relied upon, took

20  into account, considered, or conditioned its decision on" his military-related absences or general

21  animus against members of the military. *Id.* Marion's case against Sheriff Baca fails not only

22

23     [38]Generally, discriminatory motivation must be inferred from circumstantial evidence:

24    "Discriminatory motivation under the USERRA may be reasonably inferred from a variety of factors, including proximity in time between the employee's military

25    activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards

26    members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other

27    employees with similar work records or offenses." *Sheehan v. Department of*

28    *Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001).

1  because he alleges no facts showing that Sheriff Baca was motivated by animus against members

2  of the military, but more fundamentally because he has not alleged that Sheriff Baca took any

3  adverse action against him.

4  Marion's only response to defendants' argument that he "does not allege that Sheriff Baca

5  personally supervised him or personally engaged in any wrongful conduct against him,"[39] is an

6  assertion that "[u]ltimate decisions of control over a deputy's employment fall on the leader of the

7  organization."[40]  This appears to be a form of respondeat superior argument.   No court has

8  addressed whether individuals can be subjected to liability under USERRA on a respondeat

9  superior or vicarious liability theory.  Congress has explicitly mandated, however, that federal

10  courts use agency principles in interpreting Title VII and other anti-discrimination statutes.  See,

11  e.g., *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 754 (1998) ("In express terms,

12  Congress has directed federal courts to interpret Title VII based on agency principles"); Civil

13  Rights Act of 1964, 42 U.S.C. § 2000e(b) ("The term 'employer' means a person engaged in an

14  industry affecting commerce . . . and any *agent* of such a person" (emphasis supplied));

15  Americans with Disabilities Act, 24 U.S.C. § 12111(5)(A) (same); Age Discrimination in

16  Employment Act, 29 U.S.C. § 630 (same).   See also *U.S. E.E.O.C. v. AIC Security*

17  *Investigations, Ltd.*, 55 F.3d 1276, 1281 (7th Cir. 1995) ("[T]he actual reason for the 'and any

18  agent' language in the definition of 'employer' was to ensure that courts would impose *respondeat*

19  *superior* liability upon employers for the acts of their agents").  Given the purpose of USERRA

20  and the manner in which supervisor and officer conduct is imputed to an employer in myriad

21  common law and statutory contexts, it appears clear that Congress did not intend to prohibit

22  application of traditional common law agency principles in fixing liability under the statute[41]

23  ───────────────

24  [39] Motion to Dismiss at 3.

25  [40] Opp. to Motion to Dismiss at 5.

26  [41] This interpretation is also consistent with Congress's direction that the definition of
27  "employer" found in USERRA be "broadly construed."  Uniformed Services Employment and
    Reemployment Rights Act of 1994, H.R. Rep. No. 65, 103d Cong., 2d Sess., at 21, reprinted in
28  1994 U.S.C.C.A.N. 2449, 2454.

1    If Marion relies on a respondeat superior theory to prove Sheriff Baca's individual liability,

2    however, he has not alleged sufficient facts to show that the departmental employees who rendered

3    adverse employment decisions against Marion were agents of Sheriff Baca as opposed to agents

4    of the Sheriff's Department or the County.  See *General Building Contractors Association, Inc.*

5    *v. Pennsylvania*, 458 U.S. 375, 393 (1982) (recognizing that at the core of the agency relationship

6    is the "consent of one person to another that the other shall act on his behalf and subject to his

7    control," quoting RESTATEMENT (SECOND) AGENCY § 1 (1958)); *Craig v. M&O Agencies, Inc.*,

8    496 F.3d 1047, 1054 (9th Cir. 2007) (applying "traditional agency law" to determine whether an

9    employer may be held vicariously liable under Title VII); *Batzel v. Smith*, 33 F.3d 1018, 1035

10   (9th Cir. 2003) ("Agency is the fiduciary relationship that arises when one person (a 'principal')

11   manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and

12   subject to the principal's control, and the agent manifests assent or otherwise consents so to act,"

13   quoting RESTATEMENT (THIRD) AGENCY § 1.01) (2006); *Mills v. Wex-Tex Industries, Inc.*, 991

14   F.Supp. 1370, 1381-82 (M.D. Ala. 1997) (concluding that plaintiff had not stated a claim against

15   the president and principal owner of a corporate employer based on sexual harassment by her

16   supervisor, *inter alia*, because she did not allege that the supervisor was acting as the president's

17   agent).

18   For all of these reasons, defendants' motion to dismiss Marion's federal claims against

19   Sheriff Baca is granted.  The court grants Marion leave to amend the complaint to allege a claim

20   against Sheriff Baca in his individual capacity only, assuming he can do so consistent with the

21   facts and the standards set forth in this order.

22   **D.    Whether to Strike the Sheriff's Department as a Defendant**

23   Repeating the arguments advanced in their motion to dismiss, defendants also seek under

24   Rule 12(f) to strike any reference in the complaint to the Sheriff's Department because it is not

25   a separate suable entity.[42]  As the Ninth Circuit has decided this issue adversely to the Sheriff's

26   Department, and Marion has pleaded a cognizable legal claim against the department, defendants'

27

28   [42]Motion to Strike at 2-3.

1   motion to strike all references to the Sheriff's Department in the two federal claims is denied.

2       Although the legal arguments they offer concern only the USERRA claims, defendants'

3   motion to strike all references to the Sheriff's Department appears to extend to Marion's state

4   claim as well.  In *Streit*, the Ninth Circuit recognized that a department's "capacity to be sued is

5   to be determined by the law of California." *Streit*, 236 F.3d at 565 (quoting *Shaw*, 788 F.2d at

6   604).  Interpreting the relevant California statutes, the Ninth Circuit concluded that California

7   views the Sheriff's Department as a "separately suable entity." *Streit*, 236 F.3d at 565-66.  See

8   also *Shaw*, 788 F.2d at 604 (holding that a police department is a suable public entity under

9   California Government Code § 811.2, and citing *Peterson v. City of Long Beach*, 24 Cal.3d 238,

10  244 (1979)).  The court's holding, therefore, applies equally to Marion's federal and state claims.

11  Consequently, the court denies defendants' motion to strike all reference to the Sheriff's

12  Department in Marion's state claim as well.

13      **E.      Whether to Dismiss Plaintiff's Third Cause of Action**

14      Defendants next move to dismiss those portions of Marion's third cause of action that are

15  based on actions that took place prior to May 18, 2006.  Defendants assert that such claims are

16  time-barred under California's three-year statute of limitations.[43]   Marion counters that the

17  dismissal request is improper since defendants do not assert that none of the facts on which the

18  claim is based took place after May 18, 2006.  Marion therefore construes defendants' request as

19  a motion to strike rather than a motion to dismiss,[44] and argues that allegations concerning pre-

20  May 18, 2006 actions supply background and historical context that are properly included in the

21  complaint and admissible in support of his claims.  Marion also contends that dismissal would be

22  appropriate only if the allegations of the complaint, read liberally, would preclude him from

23  proving that the statute of limitations had been tolled.[45]

24      The parties agree that Marion's state claim is governed by the three-year statute of

25  _____

26  [43]Motion to Dismiss at 3.

27  [44]Opp. to Motion to Dismiss at 6.

28  [45]*Id.*

1  limitations set forth in California Code of Civil Procedure § 338(a).[46]

2      A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal
3  theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri*,
4  901 F.2d at 699.  To the extent that defendants move to dismiss the entirety of plaintiff's third
5  cause of action as time-barred under California's statute of limitations, the complaint contains
6  sufficient factual allegations of conduct occurring after May 18, 2006 that would support the
7  imposition of liability under the Military and Veterans Code that the motion must be denied.

8      To the extent defendants seek to have the court dismiss so much of the claim as is based
9  on conduct occurring prior to May 18, 2006, moreover, Marion asserts that he may be entitled
10  to equitable tolling.  California courts have developed a "definitive three-pronged test for
11  invocation of the [equitable tolling] doctrine." *Loehr v. Ventura County Community College*
12  *District,* 147 Cal.App.3d 1071, 1085 (1983).  "A plaintiff's pursuit of a remedy in another forum
13  equitably tolls the limitations period if the plaintiff's actions satisfy these factors: 1) timely notice
14  to the defendants in filing the first claim; 2) lack of prejudice to the defendants in gathering
15  evidence for the second claim; and 3) good faith and reasonable conduct in filing the second
16  claim." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993).  See also *id.* ("The
17  doctrine of equitable tolling focuses on the effect of the prior claim in warning the defendants in
18  the subsequent claim of the need to prepare a defense").

19      Similarity of the prior and subsequent claims is a significant consideration in applying the
20  second factor, prejudice to the defendant. *Id.* (citing *Collier v. City of Pasadena*, 142 Cal.App.3d
21  917, 925 (1983)).  See also *Collier*, 142 Cal.App.2d at 925 ("The critical question is whether
22  notice of the first claim affords the defendant an opportunity to identify the sources of evidence
23  which might be needed to defend against the second claim").

24      The Ninth Circuit has held that each of the three factors requires a "*practical* inquiry."
25  *Cervantes*, 5 F.3d at 1276 (emphasis original).  At a minimum, the court must consider the

26

27      [46]The statute of limitations for any "action upon a liability created by statute" is three
28  years.  CAL. CODE CIV. PROC. § 338(a).  The complaint was filed on May 15, 2009.

specific circumstances of the prior claim, the parties involved, the issues raised, the evidence considered, and the discovery conducted.  For this reason, "the question ordinarily requires reference to matters outside the pleadings, and is not generally amenable to resolution on a Rule 12(b)(6) motion, where review is limited to the complaint alone." *Id.*  See also *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1199 (9th Cir. 1988) ("To decide these equitable tolling issues in the first instance, however, the district court would have had to resolve certain disputed factual matters"); *Thompson v. California Fair Plan Association*, 221 Cal.App.3d 760, 766 (1990) (issue of equitable tolling "does not involve a pure question of law").

Marion alleges that he filed administrative grievances concerning a number of the employment decisions that constitute the basis for his present claims.[47]  "The doctrine [of equitable tolling] suspends the statute of limitations pending exhaustion of administrative remedies." *Donoghue v. Orange County*, 848 F.2d 926, 931 (9th Cir. 1987) (citing *San Diego County v. Myers*, 147 Cal.App.3d 417, 423 (1983)).  Under California law, tolling is available even if the right to sue is not conditioned on exhaustion. *Id.*  Marion's allegations sufficiently plead facts that may support equitable tolling.  Thus the dismissal of a portion of Marion's third cause of action on limitations grounds would be inappropriate.  See *Cervantes*, 5 F.3d at 1277 ("In this case, the allegations of the complaint alone will *not* properly yield a conclusion that equitable tolling does not apply.  The sole issue is whether the complaint, liberally construed in light of our 'notice pleading' system, adequately alleges facts showing the *potential* applicability of the equitable tolling doctrine" (emphasis original)).  Because plaintiff alleges that he invoked defendants' grievance procedure and pursued administrative claims, he has adequately pled that defendants received notice of his claims, and that they had an opportunity to marshal the evidence necessary to defend themselves such that there is no prejudice in permitting his claims to go

---

[47]See, e.g., Complaint, ¶ 29 ("PLAINTIFF submitted a formal complaint to DEFENDANTS"); *id.*, ¶ 39 (alleging that Marion appealed the scoring of the 2006 Sergeant's examination); *id.*, ¶ 43 ("On or about June 4, 2008 PLAINTIFF turned in a formal grievance to DEFENDANTS regarding clarification on the unspecified 'issues,' and the non-selection for FTO").

forward now.  *Addison v. State of California*, 21 Cal.3d 313, 319 (1978) ("[A]pplication of the doctrine of equitable tolling requires timely notice, and lack  of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff").  As in *Cervantes*, Marion alleges that he sought administrative relief based on the same rights asserted in this case; as a consequence, his allegations indicate "that defending the prior proceedings would have necessarily involved the collection of evidence to rebut his claims."  *Cervantes*, 5 F.3d at 1276.  "Finally, none of the allegations indicates that, as a matter of law, [plaintiff] acted other than reasonably and in good faith in bringing this action."  *Id.*[48]

To the extent defendants' reply invites the court to construe their argument that portions of the third cause of action are time-barred as a motion to strike,[49] the argument fails for similar reasons.  Even if defendants' statute of limitations arguments are correct, the court cannot strike factual allegations concerning the period predating May 18, 2006 because it is not clear "that the matter to be stricken could have no possible bearing on the subject matter of the litigation."  *LeDuc*, 814 F.Supp. at 830.  First, Marion may be entitled to equitable tolling.  Second, because Marion has alleged that the factual allegations provide "background or historical material" relevant to his state claim, they cannot be stricken unless they are "unduly prejudicial to

_____

[48]The court expresses no opinion as to whether Marion's equitable tolling argument will succeed.  At least some of Marion's claims, in particular those based on events in 2001 and 2002, may not have been the subject of administrative process.  The court, however, is mindful of the Ninth Circuit's caution that "California's fact-intensive test for equitable tolling is more appropriately applied at the summary judgment or trial stage of litigation."  *Cervantes*, 5.3d at 1276.

[49]After Marion argued that defendants' motion to dismiss the third cause of action as to acts and omissions that occurred prior to May 18, 2006 implicitly acknowledged that he had a cognizable claim with respect to actions occurring after that date, defendants filed a reply, characterizing plaintiff's argument as a contention "that any allegations relating to incidents that occurred outside the three-year statute of limitations should not be stricken because they merely supply background or historical information."  (Reply to Opposition to Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted ("Reply on Motion to Dismiss"), Docket No. 14 (Aug. 14, 2009).)  It appears, therefore, that defendants concede their objective is to strike certain factual allegations rather than secure dismissal of the third cause of action for failure to state a claim upon which relief may be granted.

defendant[s]." *Id.* That standard is not met here.

For all these reasons, therefore, defendants' motion to dismiss plaintiff's third cause of action is denied. To the extent defendants' motion can be construed as a motion to strike portions of plaintiff's third cause of action, the motion to strike is denied as well.

### F.    Whether the Court Must Strike Plaintiff's Second Cause of Action

Defendants' motion to strike seeks to have the court strike Marion's second cause of action – which pleads discrimination under USERRA – as "duplicative and indistinguishable" from his first claim for relief – which similarly pleads discrimination under USERRA.[50] Defendants assert that the claims do not advance different legal theories and that they are not based on different factual allegations.[51]

Marion counters that the two claims are based on distinct conduct that allegedly violates the statute. He states that the first cause of action alleges discrimination by harassment and denial of employment benefits, advancement opportunities, and transfers because of his membership and service in the uniformed services, and because he took action to enforce protections under USERRA.[52] Additionally, the first cause of action alleges a failure to accommodate.[53] Marion contends that the second cause of action alleges suspension of a pay schedule during his active duty leaves, failure to provide escalator pay due on return from military leaves, and suspension of seniority during military leaves.[54] Marion asserts, therefore, that the second cause of action focuses on compensation and seniority benefits, while the first alleges harassment, lost advancement opportunities, lost transfer opportunities, and retaliatory action.[55] Marion's

---

[50]Motion to Strike at 3.

[51]*Id.*

[52]Opp. to Motion to Strike at 6.

[53]*Id.*

[54]*Id.*

[55]*Id.* at 6-7.

suggested division of the claims is belied by the allegations of the complaint.  His second claim, for example, includes allegations regarding advancement opportunities as an FTO as well as accommodations for his military service.[56]   It also includes allegations regarding transfer opportunities.[57]  It is not limited exclusively to compensation and seniority benefits.

While Marion's USERRA claims are "unclear and repetitive, [however,] defendant[s have] failed to establish which allegations have no possible relation to the controversy.  Defendant[s] also fail[ ] to explain how the 'redundant [ ]' allegations may cause prejudice." *Corrections USA v. Dawe*, 504 F.Supp.2d 924, 937 (E.D. Cal. 2007).  Here, Marion can recover only once for any harm he has suffered.  Moreover, for purposes of trial, the jury can be given a single set of instructions regarding USERRA that will encompass both claims.  Thus, the "redundancy does not act to prejudice [d]efendant[s] in any way."  *Sagan v. Apple Computer, Inc.*, 874 F.Supp. 1072, 1080 (C.D. Cal. 1994).

In short, defendants have not met their burden of showing that the second cause of action is no more than a "needless repetition of other averments."  *Sagan*, 874 F.Supp. at 1079 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 704 (1990)); *id.* at 1080 (stating that it is proper to deny a motion to strike "if the redundancy consists only of alleging specifically that which has been alleged generally in other paragraphs, or if there is any doubt whether pleaded material is redundant and some party may be prejudiced by striking it," (quoting 5A Wright & Miller § 1382,  at 706)).   See also *Platte Anchor Bolt*, 352 F.Supp.2d at 1057 ("If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion").

Consequently, defendants' motion to strike plaintiff's second cause of action is denied.

## G.      Whether to Grant Defendants' Motion for a More Definite Statement Under Rule 12(e)

Defendants alternatively seek a more definite statement of Marion's second cause of action

---

[56]Complaint, ¶¶ 74-75.

[57]*Id.*, ¶ 76.

1   under Rule 12(e) of the Federal Rules of Civil Procedure.  Defendants argue they are entitled to

2   a more definite statement because as currently pled Marion's second cause of action appears to

3   be duplicative of the first and is so vague and ambiguous that they are unable to respond.

4   　　　Under Rule 12(e), "[i]f a pleading to which a responsive pleading is permitted is so vague

5   or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party

6   may move for a more definite statement before interposing a responsive pleading." FED. R. CIV.

7   PROC. 12(e).  "[A] motion for a more definite statement must be considered in light of the liberal

8   pleading standards of Rule 8(a)." *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1461 (C.D. Cal.

9   1996).  See also *Amatrone v. Messina*, No. CIV S-08-1831 MCE DAD PS, 2009 WL 2905787,

10  *1 (E.D. Cal. Sept. 1, 2009) ("A motion for more definite statement should be denied if a

11  pleading meets federal standards by providing a short and plain statement of the claim showing

12  that the pleader may be entitled to relief," citing FED. R. CIV. PROC. 8(a)(2)).  Motions for more

13  definite statement

14  　　　". . . are viewed with disfavor and are rarely granted because of the minimal

15  　　　pleading requirements of the Federal Rules.  Parties are expected to use discovery,

16  　　　not the pleadings, to learn the specifics of the claims being asserted.  A Rule 12(e)

17  　　　motion is more likely to be granted where the complaint is so general that

18  　　　ambiguity arises in determining the nature of the claim or the parties against whom

19  　　　it is being made.  Such a motion is likely to be denied where the substance of the

20  　　　claim has been alleged, even though some of the details are omitted." *Sagan*, 874

21  　　　F.Supp. at 1077 (internal citations omitted).

22  "Thus, a motion for a more definite statement should not be granted unless the defendant literally

23  cannot frame a responsive pleading." *Bureerong*, 922 F. Supp. at 1461.  See also *Hubbs v.*

24  *County of San Bernadino, California*, 538 F.Supp.2d 1254, 1262 (C.D. Cal. 2008) ("Thus, a

25  motion for a more definite statement under Rule 12(e) should be granted only where the complaint

26  is so indefinite that the defendants cannot ascertain the nature of the claims being asserted and

27  'literally cannot frame a responsive pleading,'" quoting *Bureerong*, 922 F.Supp. at 1461); *Boxall*

28  *v. Sequoia Union High School District*, 464 F.Supp. 1104, 1114 (N.D. Cal. 1979) ("While

defendant may not have been able to ascertain all the details of plaintiffs' case from the complaint, that is not the function of pleadings in the federal courts.  According to Federal Rule 12(e), a motion for a more definite statement should not be granted unless defendant cannot 'frame a responsive pleading'").

"[A]bsent special circumstances, a Rule 12(e) motion cannot be used to require the pleader to set forth 'the statutory or constitutional basis for his claim, only the facts underlying it.'" *Id.* (quoting *McCalden v. California Library Association*, 955 F.2d 1214, 1223 (9th Cir. 1990)).  The factual allegations of the complaint are relatively straightforward and through discovery, the issues and claims can be narrowed and refined.  The complaint clearly identifies the nature of Marion's claims and sets forth the factual allegations that support these claims.  *Neveu v. City of Fresno*, 392 F.Supp.2d 1159, 1169 (E.D. Cal. 2005) (stating that a "complaint [was] specific enough to apprise the defendant of the substance of the claim[s] being asserted").  Thus, the allegations in the complaint are not "so vague and ambiguous that the party cannot reasonably prepare a response." FED.R.CIV.PROC. 12(e).

For this reason, the court denies defendants' motion for more definite statement.

## III.  CONCLUSION

For the reasons stated, the court grants defendants' motion to dismiss the first and second causes of action against Sheriff Baca, but denies the motion to dismiss those claims against the Sheriff's Department.  Marion may amend to state a USERRA claim or claims against Sheriff Baca in his individual capacity only, assuming he can do so consistent with the facts and the standards set forth in this order.  The court denies defendants' motion to dismiss plaintiff's third cause of action, and denies in its entirety defendants' motion to strike, or in the alternative, for more definite statement.

DATED: October 8, 2009

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE